UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARK LINGO,                                      )
                                                 )
        Plaintiff,                            )
                                                 )
      vs.                                     )        Case No. 4:10CV84MLM
                                                 )
HARTFORD FIRE INSURANCE COMPANY,)
                                                 )
        Defendant.                            )

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant Hartford Fire

Insurance Company ("Defendant"). Doc. 38. Plaintiff Mark R. Lingo ("Plaintiff") filed a Response.

Doc. 41. Defendant filed a Reply. Doc. 47. The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 10.

### UNDISPUTED FACTS[1]

In April 2006, Plaintiff and his spouse, Stacey Lingo, (jointly, "the Lingos") approached

Michael Krupp of St. Louis Home Mortgage ("SLHM") about obtaining financing for the purchase

of a home from Karen McCarty. The Lingos knew Krupp socially. Stacy Lingo testified in her

deposition that, prior to obtaining financing, she and Plaintiff told Krupp that they wanted a fixed

rate loan for which the payments would be comparable to the amount they were paying in monthly

rent, $655, and that Krupp told her that the payments would not be over $800, the amount which the

Lingos said was acceptable. Plaintiff followed up with Krupp on the phone and by meeting Krupp

at his office to initiate the process of applying for financing. Plaintiff applied for the financing in

his name only. Plaintiff states, in an affidavit, that he was not given and never had copies of any

---

[1]      The facts are undisputed unless otherwise stated.

documents that he signed before closing and that he remembered that Krupp told him that he would

help Plaintiff obtain a mortgage for an annual fixed rate of interest of 6%-6.5%. Pl. Ex. A, ¶ 2-3.

There are no written documents reflecting or memorializing any representation by Krupp that he

would obtain any particular type of mortgage or any particular interest rate for the Lingos. Plaintiff

signed a Uniform Residential Loan Application on April 25, 2006, which states that the loan was for

"$121,000 and that Plaintiff's current home address was "2538 Marinoer Drive, St. Louis, MO

63129." Def. Ex. B. This Loan Application has a box checked indicating that it is an application for

a fixed rate loan and a box checked indicating that it is an application for an adjustable rate mortgage

("ARM") secured option. The space where the borrower was to indicate the "Source of Down

Payment" was left blank. Def. Ex. B. Plaintiff testified that he did not know what an ARM secured

option was when he signed this document and that he gave Krupp the information for filling out the

Loan Application. Pl. Dep. at 24-25.

Bear Stearns Residential Mortgage Corporation ("Bear Stearns") approved two residential

mortgages for Plaintiff, an adjustable rate mortgage in the amount of $96,800, with an interest rate

of 8.5% locked for five years, (the "ARM loan"), and a fixed rate mortgage in the amount of

$24,200, with an interest rate of 11.375%. Bear Stearns represents that it mailed documents,

including Truth and Lending Disclosure Statements and Good Faith Estimates, to Plaintiff, on about

May 23, 2006. Among these documents was an Adjustable Rate Loan Program Disclosure form,

regarding the loan with the ARM, which form stated that if the monthly payment was not sufficient

to pay all interest due, "any accrued and unpaid interest [would] be added to the loan principal and

[would] accrue interest at the note rate." Def. Ex. 6, ¶ ¶ 6-7. The address to which these documents

were sent was the same as that listed as Plaintiff's current address on the Uniform Residential Loan

Application signed by Plaintiff. Def. Ex. L, Ex. M. This address was the same for four to five

buildings, as it did not include Plaintiff's apartment number. Plaintiff testified that he never

received these documents, which would have shown the terms of the above described loans. Pl. Dep.

at 37, 43-46, 49. Plaintiff contends that, had he received the documents which Bear Stearns purports

to have mailed on May 23, 2006, he would have told Krupp that he had to have a fixed rate

mortgage; that he did not want an adjustable rate mortgage; and that, had Krupp not been able to

obtain a mortgage for him which was in accord with what he and Stacy Lingo wanted, he would not

have purchased the home from McCarty. Pl. Aff., ¶ 6; Pl. Dep. at 56.[2] McCarty states, in an

affidavit, that, had Plaintiff told her that he could not get a mortgage which was satisfactory to him,

she would have agreed to let Plaintiff cancel the contract to purchase the home, with no penalty. Pl.

Ex. C, ¶ 3.

The closing on Plaintiff's purchase of the Property and loans occurred on June 9, 2006, at

Commonwealth Title Company. Krupp sent SLHM employee Rick Kreutz to stand in for him at

closing. Plaintiff had the opportunity, at closing, to review the documents presented for his

signature. Plaintiff states that, at the closing, he first became aware that the loan terms reflected in

the closing documents were different from what he had been promised. Pl. Aff., ¶ 4; Ex. 3, ¶ 7.

Plaintiff and/or Stacy Lingo testified that Plaintiff questioned Kreutz as to why the documents did

not reflect the terms he believed would be the terms of the financing; that Kreutz said that the terms

of "the notes were a mistake and they would be fixed later so that the loan would be a fixed rate loan

at 6.5%"; that Kreutz told them to make the minimum payments under the ARM for three months

---

[2] Defendant also contends that a 30-year fixed rate loan at 6.5% would produce a monthly payment of $967, which amount would include monthly principal, monthly interest of $726, monthly escrow for taxes and insurance of $92, and monthly mortgage insurance of $111. Def. Facts, ¶ 37. While Plaintiff does not deny the accuracy of these computations, although he challenges the qualifications of the person providing this information, Plaintiff states that had he been informed that a fixed rate loan would include these amounts he would not have proceeded with the processing of the Loan Application. Pl. Resp. Def. Facts, ¶ 37.

before the loan would be fixed; that the minimum payment on the principal loan was $523 a month and the payment on the second loan was $229 a month; that this sum was close to the $800 a month that Plaintiff and his wife had been seeking; that Kreutz made it appear that they had to close that day, as it was their closing day and that the two loans would be made into one at a fixed rate loan for thirty years within three months after the closing; and that Kreutz did not state that it would be a refinancing. Pl. Dep. at 66-67, 89-91; Stacy Lingo Dep. at 55-56, 61-62; Pl. Resp. Def. Facts, ¶ 23, 23(b)-(c). Plaintiff contends that, after the loans closed, he and his wife talked to Krupp numerous times about fixing the loans; that Krupp promised to "'fix' Plaintiff's problem that his mortgages were for interest rates and amounts different from what [] Krupp represented they would be before closing"; that, after closing, "Krupp stated that he would correct the mortgages so that Plaintiff would get the fixed rate around 6% to 6.5% for a 30 year mortgage as promised"; that Krupp never assisted them in this regard; and that Plaintiff relied on Kreutz's promise that SLHM would fix the loans later. Pl. Dep. at 57-58, 78; Stacy Lingo Dep. at 73; Pl. Resp. Def. Facts, ¶¶ 11-12, 23(d)-(f).

Plaintiff contends that it was impossible for him to refinance because the loans he received included a prepayment penalty and because the loan balance on the ARM loan increased as he was paying minimum interest.[3] Plaintiff contends that he and his wife tried to refinance; that when they could not do so, they stopped making payments; and that they could not arrange a short sale because of the increased loan balance ($10,000). Pl. Dep. at 96; Stacy Lingo Dep. at 73-74, 76. For the period between June 2006 and September 2009, Plaintiff failed to make payments on both loans in a timely manner. Payments on the loans ceased altogether in September 2009. The combined

_____

[3]     Plaintiff also contends that he did not refinance because he would have been required to pay a pre-payment penalty. Defendant contends that he was not required to do so. The court notes that the pre-payment riders to the loans are ambiguous in this regard. See Def. Ex. P, Ex. S.

minimum payments required to be made and sporadically made by Plaintiff up until September 2009

totaled $775.98. This amount included $94.96 to be escrowed for taxes. Additionally, the unpaid

interest continued to accumulate and was added to the principal balance of the ARM loan.

SLHM, pursuant to the requirement of the Missouri Department of Insurance, was required

to obtain bonds to secure the protection of those utilizing the services of SLHM. In the matter under

consideration, Defendant executed two bonds payable to the Commission of the Division of Finance,

on behalf of SLHM. Doc. 16, Ex. 1, Ex. 2. One bond was for $20,000 and the second was for

$100,000. On about May 11, 2009, Plaintiff filed suit against SLHM, alleging that SLHM failed to

perform certain obligations associated with its role as a Mortgage Broker. On July 23, 2009, a

default judgment was awarded to Plaintiff and against SLHM, in the amount of $107,292.82. Doc.

16, Ex. 4. After the judgment was entered, the Missouri Division of Finance delivered copies of

Defendant's mortgage bonds to Plaintiff for collection. Plaintiff then notified Defendant and

demanded payment. Defendant has refused to make payment to Plaintiff.

In Count I of the Amended Complaint, Plaintiff alleges that judgment was rendered against

SLHM on Plaintiff's allegation, in State court, that SLHM failed to perform certain obligations

associated with SLHM's role as a mortgage broker, as specified by Mo. Rev. Stat. § 443.827(10) [4];

that Plaintiff has performed the conditions precedent necessary to collect on the two bonds described

above; and that Defendant has refused to pay Plaintiff amounts owed to Plaintiff due to the breach

of the conditions of the bonds. In Count II of the Amended Complaint, Plaintiff alleges that SLHM

violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § § 407.025 et seq.,

---

[4]     Mo. Rev. Stat. § 443.827(10) provides, in relevant part, that "[e]ach application
for a residential mortgage loan broker license shall be accompanied by an averment that the
applicant ... [w]ill not knowingly misrepresent, circumvent or conceal any material particulars
regarding a transaction to which the applicant is a party."

because it used, among other things, deception, fraud, false pretense, or false promise in connection

with the procurement and issuance of mortgages and that, pursuant to bonds issued by Defendant

securing the performance of SLHM, Plaintiff is entitled to recover from Defendant.[5]  In each Count,

Plaintiff seeks damages of $107,292.82, plus prejudgment interest, attorney's fees, and other costs

and expenses. Doc. 16.

Defendant contends, in support of its Motion for Summary Judgment, that: (1) the parol

evidence rule precludes Plaintiff from relying on alleged oral statements which contradict

unambiguous written terms of the fully executed loan documents; (2) no reasonable fact finder could

find on the evidence that SLHM made the representation claimed under the applicable standard; (3)

that the MMPA does not apply to Defendant; and (4) Plaintiff's alleged damages are wholly illusory

and, to the extent Plaintiff has suffered any misfortune in connection with the loans, it can be

attributed solely to his own actions.

In Response, Plaintiff argues that the strictures of and burden of proof under the MMPA are

less rigid than those necessary to support a claim for fraud against SLHM; that, to the extent Plaintiff

alleges fraud in the inducement, the parole evidence rule does not apply to his alleged fraud by

SLHM, the mortgage broker; that, to the extent he premises his lawsuit on the MMPA, such a claim

is not premised on fraud, but rather "deception," a lesser standard; that a claim under the MMPA

does not require proof of intent to defraud, but rather that a deceptive practice was employed that

resulted in  adverse consequences to the deceived party; that wrongdoing under the MMPA can be

premised on false pretense, false promise, misrepresentation, and unfair practice or concealment; that

Missouri law does not preclude a claim for fraud in which representations contradict the terms of a

___

[5]     This matter was originally filed in State court and was removed by Defendant to
federal court.

contract; and that, in regard to his damages, Plaintiff is entitled to be put in the position that he would have been had SLHM not acted deceptively.

## II.
## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function

is not to weigh the evidence, but to determine whether there is a genuine issue for trial. <u>Anderson,</u> 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." <u>Id.</u> at 252. With these principles in mind, the court turns to an analysis of Defendant's Motion.

## III.
## DISCUSSION

**A.    Fraud in the Inducement:**[6]

Under Missouri law, to establish fraud in the inducement, a plaintiff must show intent to deceive or induce reliance. In particular, to prevail at trial on a claim of fraud in the inducement a plaintiff must prove:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. <u>See</u> <u>Emerick v. Mutual Ben. Life Ins. Co.</u>, 756 S.W.2d 513, 519 (Mo.1988). *The absence of any element is fatal to a fraud claim.* <u>Id.</u> at 519.

<u>Midwest Printing v. AM Int'l Inc.</u>, 108 F.3d 168, 170 (8th Cir. 1997) (emphasis added).

First, the court will consider whether Plaintiff suffered damages, a required element of fraudulent inducement. Plaintiff seeks to recover $107,292.82, the amount of principal originally due on the loans. <u>Id.</u> If he were to recover this amount Plaintiff would enjoy a windfall as he did not repay this principal. In fact, records of Plaintiff's payments on the ARM loan reflect that the principal balance due, as of September 1, 2009, had increased to $109,477.54. Thus, because Plaintiff made no down payment on the house, there is no evidence that he ever had any equity in

---

[6]     The court will address Count II first, as the standard for proving fraud in the inducement is more rigorous than that under the MMPA, as discussed below.

the house. Moreover, the loan documents did not require Plaintiff to make payments which were in excess of that which he anticipated, which payments were approximately what Plaintiff was paying in rent.[7] To the extent Plaintiff contends that he suffered damages in that his credit rating was lowered, it cannot be said that this was a proximate cause of SLHM's conduct; rather, it was a consequence of Plaintiff's failing to make timely payments and/or his ceasing to make payments under the loans, which payments were within the range he requested. See Marietta v. Hogge, 161 F.3d 506 (8th Cir. 1998) (holding that damages, based on alleged fraud, must be the natural and probable consequence of the fraud). As such, the court finds that summary judgment should be granted in Defendant's favor as to Plaintiff's claim based on fraud in the inducement because the undisputed facts establish that Plaintiff did not suffer damages.

The court will consider, in the alternative, whether Plaintiff's parole evidence is admissible to prove fraud in the inducement. "Missouri courts have consistently held that a misrepresentation of ... intent [] is itself a misrepresentation of an 'existing fact' upon which an actionable fraud claim may be based." Pinken v. Frank, 704 F.2d 1019, 1026 (8th Cir. Mo. 1983) (citing White v. Mulvania, 575 S.W.2d 184, 188 (Mo. banc 1978); Wallach v. Joseph, 420 S.W.2d 289, 295 (1967)). Thus, parol evidence inconsistent with the express terms of a written contract is admissible to establish a fraudulent inducement claim. Pinken, 704 F.2d at 1023 (citing Wallach, 420 S.W.2d at 294-95; Smith v. Tracy, 372 S.W.2d 925, 937 (Mo. 1963); Wolf v. St. Louis Pub. Serv. Co., 357 S.W.2d 950, 959 (Mo. Ct. App.1962); Forsythe v. Starnes, 554 S.W.2d 100, 110-11 (Mo. Ct. App.1977); Employers' Indemnity Corporation v. Garrett, 327 Mo. 874, 38 S.W.2d 1049, 1053-54 (Mo. 1931)).

---

[7] The First Payment Letter for the ARM loan said that the total payment due was $538.62. Def. Ex T. The First Payment Letter for the $24,200 loan states that Plaintiff's payments would be $229.40. Def. Ex. X.

As further explained by the court in <u>Pinken</u>, 704 S.W.2d at 1023 n.4, 32A C.J.S. Evidence § 979a.

p. 467 (1964), provides:

> Generally, the parol evidence rule has no application where there has been fraud, except under unusual circumstances, and it is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its *execution was procured by fraud*, or that, by reason of fraud, it does not express the true intentions of the parties.

(citing <u>Dowd v. Lakes Sites, Inc.</u>, 365 Mo. 83, 276 S.W.2d 108, 112 (Mo. 1955)).

The court in <u>Pinken</u>, 704 F.2d at 1022, stated that, for parole evidence to be admissible for purposes of proving fraud in a written contract, "it must tend to establish some independent fact or representation, *some fraud in the procurement of the instrument*, or some breach of confidence concerning its use, and *not a promise directly at variance with the promise of the writing*." To the extent that Plaintiff and Stacy Lingo testified that they were promised one fixed rate loan by Krupp, it can be argued that this testimony relates to the procurement of the loans. Additionally, testimony that the Lingos were told that the loans would be "fixed," is not "directly at variance" with the terms of the loan agreements. As such, the court finds that the parole evidence upon which Plaintiff relies is admissible for purposes of proving fraud in the inducement.

Nonetheless, the court must consider whether Plaintiff can make a submissible case based on parole evidence, the only evidence which he has in support of his claim. As stated by the Missouri appellate court, in <u>Blanke v. Henderson</u>, 944 S.W.2d 943, 944 (Mo. Ct. App. 1997):

> To make a submissible case, substantial evidence is required for each fact essential to liability. <u>Eidson v. Reproductive Health Services</u>, 863 S.W.2d 621, 626 (Mo. App.1993). Substantial evidence is evidence which, if true, has probative force upon the issues and from which the trier of facts can reasonably decide a case. <u>Id.</u> The questions of whether evidence in a case is substantial and whether the inferences drawn are reasonable are questions of law. <u>Id.</u> A submissible case is not made if it solely depends on evidence which equally supports two inconsistent and contradictory factual inferences because liability is then left in the realm of speculation, conjecture and surmise. <u>Id.</u>

To the extent Plaintiff relies on Williams v. Finance Plaza, 78 S.W.3d 175 (Mo. Ct. App. 2002), in support of his argument that the oral testimony at issue is sufficient to establish a submissible case, Williams is distinguishable. In Williams the plaintiff did not know when he purchased the car that it had more miles than the odometer reflected at the time of purchase. In this matter, Plaintiff knew that the mortgage documents which he signed did not reflect what he wanted at the time he signed them. Additionally, in Williams, the dealer admitted that he knew the car had more miles on it than was reflected on the odometer. There is no admission in this matter that, prior to closing, either Krupp or Kreutz knew Plaintiff wanted only a fixed rate mortgage. To the extent Plaintiff relies on Jacobs Manufacturing Co. v. Sam Brown Co., 19 F.3d 1259 (8th Cir. 1994), Jacobs is distinguishable from the matter under consideration because in Jacobs there was independent evidence, such as internal reports, to corroborate the plaintiff's position. There is no such evidence in this case.

Additionally, it is undisputed that Plaintiff was aware of the terms of the written loan agreements at the time he signed them. Plaintiff does not suggest that any representative of SLHM concealed or attempted to conceal the terms of the loans which Plaintiff signed nor that any representative of SLHM told Plaintiff that he was signing something different than what was set forth in the loans' terms. Plaintiff, moreover, has not presented any documents to substantiate his claim that, prior to closing, all documents presented to him stated that his loan would be for a fixed rate with a 6.5% interest rate. Def. Ex. 3, ¶ 4. While Plaintiff contends that, on numerous occasions he called Krupp regarding the terms of the mortgage and that Krupp never helped him, it is undisputed that Plaintiff never memorialized these requests in writing.[8] Even assuming, arguendo,

---

[8]    The court notes that Defendant's assertion that Plaintiff did not ask how the loans would be fixed is controverted, as Plaintiff contends that Kreutz told him they would be fixed to reflect a 6.5% interest rate for a single loan. Based on this disputed facts, Kruetz's stating that

that, at the time he signed the loan agreements, Plaintiff did not understand what an ARM was, parties who sign contracts are bound by them, regardless of whether they understood what they signed. See MCC-Marble Ceramic Ctr., Inc. v. Ceramica Nuova D'Agostino, S.P.A., 144 F.3d 1384, 1387 n.9. (11th Cir. 1998). Further, Plaintiff's contention that he never received the pre-closing documents prior to closing does not support his position that he makes a submissible case, for several reasons. First, the address to which the pre-closing documents were sent was the same as the address which Plaintiff provided on the Loan Application; he did not provide an apartment number on the Loan Application. Second, it was Bear Stearns who mailed the pre-closing documents, not SLHM. Third, the Real Estate Settlement Procedures Act ("RESPA"), 24 C.F.R. § 3500.11, requires only that such documents be mailed to the address stated on a loan application, unless a lender has specifically been informed, in writing, that the borrower had a change of address. The RESPA does not require that pre-closing loan documents be received.[9]

Not insignificantly, the mortgage agreement which Plaintiff signed provided Plaintiff with what he wanted to the extent his mortgage payments were less than $800. As such, considering these undisputed facts, the court finds that the parole evidence which Plaintiff submits in support of his

---

the loan would be fixed is not ambiguous for purposes of summary judgment, as suggested by Defendant.

[9]     24 C.F.R. § 3500.11, provides as follows:

The provisions of this part requiring or permitting mailing of documents shall be deemed to be satisfied by placing the document in the mail (whether or not received by the addressee) addressed to the addresses stated in the loan application or in other information submitted to or obtained by the lender at the time of loan application or submitted or obtained by the lender or settlement agent, except that a revised address shall be used where the lender or settlement agent has been expressly informed in writing of a change in address.

allegation of fraud in the inducement is insufficient to establish a submissible case. Thus, even assuming that Plaintiff's parole evidence is admissible, Plaintiff cannot make a submissible case to establish the elements required to prove fraud in the inducement, including that false material misrepresentations were made. See Midwest Printing, 108 F.3d at 170. The court finds, therefore, that summary judgment should be granted in Defendant's favor in regard to Count I of Plaintiff's Amended Complaint.

**B.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq.:**

Defendant argues that because the MMPA does not apply to it summary judgment should be granted in its favor as to Plaintiff's MMPA claim. Mo. Rev. Stat. § 407.020.2(2) does provide that the MMPA "shall not apply" to any institution or company which is subject to licensing or regulation by the director of the division of finance under Mo. Rev. Stat. §§ 361-369, 371. Indeed, Defendant is registered with the State of Missouri, Department of Insurance and Financial Institutions and the Bonds upon which Plaintiff seeks to collect were required by Mo. Rev. Stat. § § 443.800, et seq. Doc. 1, Ex. 1. Plaintiff, however, alleges that SLHM violated the MMPA, not Defendant. As such, the court finds that Defendant's allegation that it is exempt from suit pursuant to the MMPA is without merit.

The court will, therefore, consider whether Plaintiff can otherwise withstand Defendant's Motion for Summary Judgment as to Plaintiff's MMPA claim. As stated by the court in Clement v. St. Charles Nissan, Inc., 103 S.W.3d 898, 899-900 (Mo. Ct. App. 2003):

> The Merchandising Practices Act was created to supplement the definition of common-law fraud. State ex rel. Danforth v. Independence Dodge, Inc., 494 S.W.2d 362, 368 (Mo. App. K.C. Dist.1973). It attempts to preserve fundamental honesty, fair play and right dealings in public transactions. Id. "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the state of Missouri, is declared to be an unlawful

13

practice." Section 407.020.1. There is no definitive definition of deceptive practices. State ex rel. Webster v. Areaco Inv. Co., 756 S.W.2d 633, 635 (Mo. App. E.D.1988). Section 407.020 is broad in scope in order to prevent evasion by overly meticulous definitions; *the determination of whether fair dealing has been violated turns on the unique facts and circumstances of each case*. Id. "It is not necessary in order to establish 'unlawful practice' to prove the elements of common law fraud." Id.

(emphasis added).

While the elements of common law fraud need not be established to prove a violation of the MMPA, a plaintiff, nonetheless, is required "to prove that the defendant's conduct constituted unfair practices. ... It is the defendant's conduct, not his intent, that constitutes unfair practices." State ex. rel. Webster v. Eisenbeis, 775 S.W.2d 276, 278-79 (Mo. Ct. App. 1989) (citations omitted). Section 407.025.1 creates a private cause of action under the MMPA for any practice deemed unlawful under § 407.020.

To recover under the MMPA, a plaintiff must establish that he has suffered damages. Clement, 103 S.W.3d at 900 (holding that the plaintiff's being compelled to continue make lease payments in order to avoid the consequences of the defendant's misrepresentation "could be considered damages). Further, whether a plaintiff can "present evidence to show the amount of [his] damages is a question of fact to be tested by summary judgment or trial." Id. (citing McGuire v. Bode, 607 S.W.2d 165, 168 (Mo. Ct. App. 1980)).

As discussed above, if Plaintiff were to recover $107,292.82, he would enjoy a windfall. Additionally, Plaintiff received what he sought in that he was not required, by the loan documents, to make payments which were in excess of that which he anticipated. Furthermore, as discussed above, to the extent Plaintiff's credit rating was lowered, it was not a result of SLHM's conduct, it was a result of Plaintiff's conduct. The court finds, therefore, in the matter under consideration, that the undisputed facts establish that Plaintiff has not suffered damages as anticipated by the MMPA. As such, even assuming, arguendo, that SLHM's conduct constituted deceptive practices under the

14

MMPA and that Plaintiff's parole evidence is admissible under the MMPA, the court finds that summary judgment should be granted in Defendant's favor as to Count II of Plaintiff's Amended Complaint.

Alternatively, the court notes that the undisputed facts establish that SLHM did not conceal anything from Plaintiff; that the terms of the loans, at the time Plaintiff signed the loan agreements, were fully disclosed to Plaintiff; that Plaintiff was aware of the terms of the loans at the time he chose to sign them; and that, financially, Plaintiff received what he wanted in regard to the amount of monthly payments. Plaintiff alleges that he told Krupp, prior to closing that he wanted only a fixed rate loan; that he relied on representations made at closing that the loans would be fixed when he chose to sign the documents; and that, subsequent to closing, Krupp never assisted him in fixing the terms of the loans. Plaintiff presents no other evidence in support of his claim against SLHM based on the MMPA, other than the parole evidence attributed to Kreutz and Krupp. As stated above, Plaintiff's not understanding what an ARM was prior to signing is of no consequence. See MCC-Marble, 144 F.3d at 1387 n.9. Therefore, assuming that Plaintiff's parole evidence is admissible to prove his MMPA claim,[10] the court finds, as a matter of law, that it cannot be said that SLHM engaged in a practice which is unlawful under the MMPA. See Clement, 103 S.W.3d at 900. The court finds, therefore, that summary judgment should be granted in favor of Defendant as to Count II of the Amended Complaint.

---

[10] Significantly, cases upon which Plaintiff relies in support of his argument that parole evidence is admissible to prove his MMPA claim address the admission of parole evidence where fraud in the inducement is alleged; they do not address the admission of parole evidence under the MMPA. Thus, arguably, the general rule that parole evidence is not admissible to contradict a written agreement is applicable to claims under the MMPA. Nonetheless, Plaintiff argues that his parole evidence is admissible under the MMPA because it imposes a standard of proof which is less stringent than that applicable to fraud in the inducement.

## IV.
## CONCLUSION

For the reasons fully set forth above, the court finds that the undisputed facts establish that summary judgment should be granted in Defendant's favor in regard to all allegations of Plaintiff's Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant is **GRANTED**; Doc. 38

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of May, 2011.